United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Horacio Sequeira, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-24542-Civ-Scola |
| | ) | |
| Gate Safe, Inc., Defendant. | ) | |

### Order on Motion for Summary Judgment

Plaintiff Horacio Sequeira, proceeding pro se, brings this suit against Defendant Gate Safe, Inc. ("Gate Safe") for wrongful discharge and defamation. This matter is before the Court on Gate Safe's Motion for Summary Judgment (ECF No. 157). For the reasons set forth below, the Court **grants** Gate Safe's motion.

1. **Background**

Sequeira's claims arise out of an injury that he allegedly suffered while performing his duties as a Security Operator for Gate Safe. Sequeira's First Amended Complaint asserted multiple claims against Gate Safe, including wrongful discharge and defamation, as well as claims against various other defendants (ECF No. 9). The Court dismissed the claims against the other defendants, and dismissed the defamation claim against Gate Safe with leave to amend (ECF No. 47). Sequeira subsequently filed a Second Amended Complaint that included two new defendants and asserted various claims against the defendants, including an amended defamation claim against Gate Safe (ECF No. 48). The Court granted all of the motions to dismiss, but gave Sequeira one final opportunity to amend the defamation claim against Gate Safe (ECF No. 104). Sequeira subsequently filed a Third Amended Complaint (ECF No. 122).

The Third Amended Complaint asserts claims of wrongful discharge and defamation against Gate Safe. The wrongful discharge claim alleges that Sequeira's doctors provided his supervisors with work restrictions after he suffered the work-related injury. (Third Am. Compl. ¶ 11, ECF No. 122.) Sequeira alleges that his supervisors subsequently pressured him to quit by ignoring the work restrictions, mocking his limp, not providing him with heavy-duty boots, and implying that Sequeira was faking his injury. (*Id.* ¶ 12.) Sequeira alleges that his supervisors suspended him after he informed them that he was going to file a worker's compensation claim "for unsatisfactory work performance due to walking too slowly." (*Id.* ¶¶ 13, 14.)

The defamation claim alleges that Sequeira's supervisors imitated and mocked the limp that resulted from his injury, made sarcastic statements about Sequeira faking his injury, and had him "escorted around as a criminal at the workplace by a security guard and a Gate Safe supervisor on three separate occasions." (*Id.* ¶¶ 24, 27, 31.) Sequeira alleges that this conduct imputed the crime of fraud to him and that his clearance to work at the airport was terminated as a result. (*Id.* ¶¶ 27, 31.) In ruling on Gate Safe's partial motion to dismiss the Third Amended Complaint, the Court held, for the second time, that Sequeira cannot base his defamation claim on non-verbal conduct. (Order 3-4, ECF No. 149.) However, the Court permitted the defamation claim to proceed with respect to the alleged verbal statements. (*Id.* at 4-5.)

## 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

### 3. Analysis

**A. Wrongful Discharge Claim**

Sequeira brings his wrongful discharge claim under Florida Statute § 440.205. That provision provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." With respect to Sequeira's allegations that his supervisors pressured him to quit by ignoring his work restrictions, Florida courts have held that such a claim does not fall within the scope of § 440.205, and is properly addressed by the judge of compensation claims. *See Fratarcangeli v. United Parcel Service*, No. 8:04-cv-2812-T-TGW, 2008 WL 821946, at *17 (M.D. Fla. Mar. 26, 2008) (holding that the plaintiff's claim that the defendant forced him to work in excess of physical limitations imposed upon him by a doctor was not actionable under § 440.205); *Coker v. Morris*, No. 3:07cv151/MCR/MD, 2008 WL 2856699, at *7 n.21 (N.D. Fla. July 22, 2008) (internal citations omitted) (holding that employer's alleged failure to provide work which respects an employee's physical limitations is not actionable under § 440.205); *Montes de Oca v. Orkin Exterminating Co.*, 692 So.2d 257, 259 (Fla. 3d. Dist. Ct. App. 1997) (holding that an allegation that the defendant attempted to coerce the plaintiff into settling a workers' compensation claim by not respecting his physical limitations did not fall within the scope of § 440.205).

However, Sequeira also alleges that he was terminated after he informed his supervisors that he intended to file a worker's compensation claim, and that his supervisors pressured him to quit by mocking his limp, implying that he was faking his injury, and failing to provide him with work boots. Florida courts apply the burden-shifting approach used to analyze Title VII retaliation claims to Florida workers' compensation retaliation claims. *Humphrey v. Sears, Roebuck, and Co.*, 192 F.Supp.2d 1371, 1374 (S.D. Fla. 2002) (Moore, J.); *Coker*, 2008 WL 2845699, at *7 (citations omitted). Under this approach, a plaintiff must first establish a prima facie case of retaliation by demonstrating that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Fratarcangeli*, 2008 WL 821946, at *6 (citing *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004)). Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its employment decision." *Id.* at *4 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1981)). This burden is "'exceedingly light.'" *Holifield v. Reno*, 115

F.3d 1555, 1564 (11th Cir. 1997) (citing *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)). If the defendant meets the burden, "the plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext . . . ." *Id.* (citations omitted). Indeed, Florida courts have held that "Section 440.205 does not . . . provide a blanket prohibition against the discharge of an employee for legitimate business reasons once the employee has filed or pursued a workers' compensation claim, but prohibits only the retaliatory discharge of an employee for the act of filing a workers' compensation claim." *Musarra v. Vineyards Dev. Corp.*, No. 2:02-CV-301-FTM-29SP, 2004 WL 2713264, at *5 (M.D. Fla. Oct. 20, 2004) (citing *Pericich v. Climatrol, Inc.*, 523 So.2d 684, 685 (Fla. 3d. Dist. Ct. App. 1988)).

Gate Safe does not dispute that Sequeira filed a worker's compensation claim in connection with his July 10, 2016 injury and that he was subsequently fired on October 1, 2016. (Mot. 9.) However, Gate Safe argues that Sequeira has not established a prima facie case of retaliation, and that it had a legitimate, non-retaliatory reason for terminating his employment. (*Id.* 10-13.)

The undisputed facts establish that Sequeira's job as a Security Coordinator required him to inspect airline food carts for items that could be used as weapons, and to seal the carts once the inspection was complete. (Gate Safe's Statement of Undisputed Material Facts ¶ 3, ECF No. 156.) American Airlines required that Gate Safe personnel inspect catering equipment in accordance with specific guidelines. (*Id.* ¶ 5.) Gate Safe's Work Rule 12 provided that an employee who violated or breached customer security guidelines would be subject to suspension and discharge. (*Id.* ¶ 6.) In addition, Gate Safe's Zero Tolerance Policy stated that certain violations, including a breach of security guidelines, "are considered so severe that immediate termination is the only option." (*Id.*; Zero Tolerance Policy, ECF No. 155-4.) Finally, Gate Safe's disciplinary matrix provided for termination in the event that an employee completely failed to check food carts. (Gate Safe's Statement of Undisputed Material Facts ¶ 7.) Sequeira received training on American Airlines' Catering Search & Seal Program, and signed acknowledgments stating that he had received Gate Safe's Work Rules and Zero Tolerance Policy. (*Id.* ¶¶ 10-11.)

Following Sequeira's work-related injury, a doctor cleared him to return to work with no restrictions on August 29, 2016. (*Id.* ¶ 20.) On September 29, 2016, Gate Safe's Manager of Operations, Dennis Latchu, performed a routine review of security video and determined that on September 27, 2016, Sequeira sealed food carts without inspecting them. (*Id.* ¶ 21.) Gate Safe Supervisor of Operations Jean Ade also reviewed the video and confirmed Latchu's

observation. (*Id.*) Latchu reported the incident to Gate Safe's Director of Operations, Human Resources Manager, and Compliance Panel, which was responsible for ensuring employees' compliance with TSA and airline security standards. (*Id.* ¶ 22.) Latchu also interviewed Sequeira and asked him if he recalled failing to check some of the food carts on September 27, 2016. (*Id.* ¶ 23.) Sequeira initially stated that a lead employee had told him that he did not have to check the food carts. (*Id.*) After that employee was brought into the interview, Sequeira stated that he had seen other Security Coordinators failing to inspect the carts. (*Id.*) Latchu then asked Sequeira to prepare an affidavit. (*Id.* ¶ 24.) The affidavit that Sequeira prepared stated, in relevant part, that he "had with a little pain in my foot and I take I [sic] pill of Ibuprofen of 800 grams, and . . . forget review some cars . . . ." (*Id.*; Sequeira Aff., ECF No. 155-6.) The lead employee also submitted an affidavit denying that she had told Sequeira not to inspect the carts. (Gate Safe's Statement of Undisputed Material Facts ¶ 24.)

Latchu suspended Sequeira's employment pending an investigation and revoked his security credentials. (*Id.* ¶ 25.) He also prepared a Corporate Incident Report explaining the basis for the suspension. (*Id.*) The Compliance Panel reviewed the information provided by Latchu, including the affidavits from Sequeira and the lead employee. (*Id.* ¶ 26.) Sequeira's employment was terminated on October 1, 2016. (*Id.*) Around the same time, Latchu observed two other employees failing to inspect the food carts. (*Id.* ¶ 29.) Those employees were also terminated. (*Id.*)

In response to Gate Safe's Motion for Summary Judgment, Sequeira argues that Gate Safe failed to produce any evidence in support of the motion, and that the documents relied upon by Gate Safe actually support the Third Amended Complaint because the medical restrictions demonstrate that he should have been sitting down instead of standing and inspecting food carts. (Resp. 5-6, ECF No. 167.) However, as stated above, Gate Safe produced evidence that Sequeira was cleared to return to work without restrictions as of August 29, 2016. Moreover, for the reasons set forth above, any allegations that Gate Safe failed to comply with Sequeira's medical restrictions are not cognizable under § 440.205.

In addition, Sequeira alleges that the declarations that Gate Safe provided from Latchu and Ade are fraudulent, "without date and void." (Resp. 6.) However, only Latchu's declaration is undated, and the facts set forth in his declaration are supported and corroborated both by documentary evidence and the declarations from Ade and Gate Safe's Human Resources Director, who was also a member of the Compliance Panel. Other than the fact that Latchu's declaration is undated, Sequeira has provided no other reason to justify his belief that the declarations from Latchu and Ade are fraudulent.

Next, Sequeira argues that Latchu and Ade's declarations are hearsay. Federal Rule of Civil Procedure 56(c)(1)(A) permits a party to support an assertion by citing to materials in the record, including affidavits or declarations. A declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The declarations submitted by Gate Safe are based on personal knowledge and set out facts that would be admissible in evidence, and the facts set forth in the declarations are supported by documentary evidence.

Finally, Sequeira argues that Gate Safe's discovery responses were "evasive and incomplete." (Resp. 7.) However, discovery closed on August 25, 2017, and Sequeira did not file a motion to compel better responses. Moreover, Sequeira attached the allegedly incomplete discovery responses as an exhibit to his response, and the responses are from Defendant American Airlines, Inc., who has been dismissed from this case. (Resp. 29-61.)

The Court has reviewed all of the exhibits attached to Sequeira's response. None of them call into question the facts set forth above concerning Sequeira's termination. Moreover, other than making conclusory allegations about fraud on the part of Gate Safe, Sequeira has not identified any facts that he actually disputes. Thus, even assuming that Sequeira has established a prima facie case of retaliation, he has failed to demonstrate that Gate Safe's proffered reason for his termination is pretextual, or that he was terminated because of his worker's compensation claim.

**B. Defamation Claim**

As noted above, the Court has already ruled that Sequeira cannot base his defamation claim on non-verbal conduct. (Order 4, ECF No. 149.) Thus, the only remaining allegations in the Third Amended Complaint that could support Sequeira's defamation claim are those concerning the sarcastic comments allegedly made by Sequeira's supervisor, Mr. Carlton. (Third Am. Compl. ¶ 27.) To recover for either libel or slander, a plaintiff must establish that: 1) the defendant published a false statement; 2) about the plaintiff; 3) to a third party; and 4) the party suffered damages as a result of the publication. *See Valencia v. Citibank Int'l*, 728 So.2d 330 (Fla. 3d DCA 1999).

Sequeira confirmed during his deposition that Carlton was the only person who made defamatory comments about him. (Sequeira Dep. Tr. 192:23 – 193:2, ECF No. 155-1.) However, Sequeira could not identify any verbal statements made by Carlton, and instead repeatedly referred to the gestures that the Court has already ruled cannot serve as the basis for a defamation claim. (*Id.* at 193:3 – 194:18.) Sequeira argues that the excerpts from the

deposition transcript "pretend to mislead to the court," but he has neither explained why the excerpts are misleading nor has he provided evidence of any verbal statements that he alleges to be defamatory. (Resp. 2-3.) Therefore, Gate Safe is entitled to summary judgment on the defamation claim.

### 4. Conclusion

For the reasons set forth above, the Court **grants** Gate Safe's Motion for Summary Judgment (**ECF No. 157**).

**Done and ordered** in chambers, at Miami, Florida, on January 24, 2018.

_____
Robert N. Scola, Jr.
United States District Judge

cc:
Horacio Sequeira
13280 Port Said Rd.
C301
Opa-Locka, FL 33054